**WYMAN et al. v. UNITED STATES.**

**No. 11701.**

Circuit Court of Appeals, Ninth Circuit.

Jan. 29, 1948.

C. E. Hughes, of Seattle, Wash., for appellants.

J. Charles Dennis, U. S. Atty., and John E. Belcher, Asst. U. S. Atty., both of Seattle, Wash., for appellee.

Before DENMAN, BONE and ORR, Circuit Judges.

DENMAN, Circuit Judge.

This is an appeal by several appellants from a judgment of the district court holding them liable for selling planed fir lumber in excess of the maximum prices fixed by Revised Maximum Price Regulation 26 and awarding the amount of the excess over the prices in damages to Porter, Price Administrator. The United States thereafter was substituted as plaintiff and this appeal taken against it.

The appellants' claim that the one year statute of limitation of such suits here bars recovery because the second amended complaint, on which the judgment rests, is the first to base the claim for damages on the violation of RMPR 26 and that it was filed more than a year after the described oversales. There is no merit in this contention. The first amended complaint, filed within the year, plainly bases its claim for damages on appellants' violation of RMPR 26.

The controversy here concerns the treatment by the district court of Section 16, Article II, of RMPR 26, providing as follows: "Sec. 16. Prohibited practices. (a) General. Any practice which is a device to get the effect of a higher-than-the-ceiling price without actually raising the dollars-and-cents price is as much a violation of this regulation as an outright over-ceiling price. This applies to changes in credit practices and cash discounts and to devices

making use of commissions, services, transportation arrangements, premiums, special privileges, tying agreements, trade understandings and the like."

We agree with the district court that what was done by these appellants was to avail themselves of the kind of device which Section 16 prohibits, to obtain a price for their Douglas fir planed lumber in excess of the maximum elsewhere provided in RMPR 26.

The three appellants are partners in the Wyman Mill Company. Up to early in the year 1944 they had manufactured surfaced Douglas fir and other softwood lumber, the surfacing being done in the planing mill adjacent to their mill producing the rough lumber. This surfaced lumber was sold through the partnership's agent, M. A. Wyman, acting individually under the name of M. A. Wyman Lumber Company. In the terminology of the regulations the Wyman Mill Company in so making and selling its lumber is a "mill." It was claimed that money was lost in the sale of the surfaced lumber.

To insure a profitable operation, the three men organized a corporation, the Granite Falls Planing Mill, to plane lumber and to collect a separate fee for its services in planing the rough lumber. The fees so collected would inure to the benefit of the men through their stock ownership in the corporation. In the phraseology of the regulations the planing mill is a "custom mill."

The price of the rough lumber they received as partners in the Wyman Mill Company, the "mill," plus the service charge realized through the Planing Mill corporation, the "custom mill," exceeded the price for the surfaced lumber if sold by the Lumber Company as theretofore. It was for this excess that the Administrator recovered.

The facts are ample from which the district court well could infer that the change in the method of business was a device to avoid the price limitation on surfaced lumber. The machinery of the Planing Mill had been that of the Mill Company. The Planing Mill's plant was on land formerly part of the Mill Company. The continuity of mechanical process from long to planed lumber had no substantial change. Appellant Doran was superintendent of both the rough milling and the planing process after, as well as before, the corporate entity was devised. The appellant M. A. Wyman was the Lumber Company, a partner in the Mill Company and the president of the Planing Mill.

By a process, not clearly explained, the purchasers of planed lumber from the Lumber Mill learned that now they must put in not only an order to the Mill Company for rough lumber but also a separate order to the Planing Company for the service of planing it. One of the orders went to the M. A. Wyman Lumber Company and the other to the Granite Planing Mill, whose representative was in the Lumber Company's office. When the process was ended by the planing of the lumber, the purchasers received their surfaced lumber on bills of lading issued from the offices of the Lumber Company by the representative of the Planing Mill, who described the Lumber Company as shipper. As seen, so far as concerns the lumber, the physical process through planing was unchanged. So far as the purchasers are concerned, each wrote two letters to the same place instead of one but paid, in addition to what he paid before, his share of $19,130.67 which the district court found was the excess of the total of the rough lumber price plus the separate charge for surfacing over the maximum price of surfaced lumber.

Under some circumstances persons manufacturing rough lumber may have a planing mill as a separate enterprise. This is governed by Maximum Price Regulation 539, 9 F.R. 6152, which sets the price of such services as planing lumber but confines the operation to a "custom mill" which is "not owned and controlled by and is not under common control with a 'mill' producing the species covered by RMPR 26 * * * wherever located."

It is apparent that the appellants' corporation's "custom mill" surfacing rough lumber already sawed and the appellants' "mill" which sawed it are owned and controlled by the same people. Appellants claim they fall within an exception of Regulation 539 by which applications may be filed by per-

sons coming within the above prohibited class for "special permission" to operate a "custom mill." This application must show

"(i) The location of the plant, with a description of the physical lay-out of operations in relation to any other activities relating to forest products carried on by the applicant wherever located.

"(ii) The extent of ownership or control of or by any other operations relating to forest products, or of common ownership or control, giving name, location, and nature of the other operations.

"(iii) Applicant's milling facilities, and the capacity thereof in MBM per day, together with a statement of total footage in rough boards and dimension and rough or surfaced plank and timbers, and green or partially dry lumber in these sizes, sold during the 30 day period preceding date of application.

"(iv) Any other information the applicant may wish to submit."

No application was ever filed under Regulation 539 which became effective June 5, 1944. However, on May 3, 1944, under a prior Regulation 165, 9 F.R. 4227, with identical provisions, an application was made by the Planing Mill signed by M. H. Wyman, who, incidentally, is the third appellant active in the business of that corporation. The application suppresses all the information required by provision (ii), supra. Instead of telling the truth concerning the large lumber mill of which it had just been a part, it seeks to convey the impression that it was created to surface rough lumber from small tie mills in the neighborhood. Appellants are in no position to complain that the application received no attention.

■ In any event, the failure to act on the part of the Administrator is not the equivalent of the granting of the necessary "special permission" and the charges for the custom milling of the rough lumber were clearly illegal. This illegality pervaded the entire transaction and with the other facts clearly warranted the holding of the district court that it is a device to avoid the price limitation of RMPR 26.

M. H. Wyman and Edward Doran were not served with the original complaint filed or the summons issued thereon on July 11, 1945. They claim that under the law of the State of Washington the whole cause of action of the United States abated as to them on the failure to serve the original summons and complaint within the three months thereafter. They moved the district court to quash as to them the service of the amended complaint and summons issued on November 7, 1945 and of the second amended complaint and summons issued February 27, 1946. The court's orders denying the motions to quash are claimed error.

■ We do not agree. This is a suit by the representative of the United States under power conferred by a federal statute. The Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, control the effect of the service of process. Carnegie National Bank v. Wolf Point, 9 Cir., 110 F.2d 569, 572. Nothing in them even suggests that a delay of three months in the service of a summons in any way affects the right to amend pleadings or the subsequent issue process thereon.

■ The district court, however, did quash the two services as to M. H. Wyman and Doran in their individual capacities and, nevertheless, rendered judgment against them as individuals. We hold that as to these two defendants the judgment should have been limited to their capacities as partners in the copartnership of themselves and M. A. Wyman, doing business as Wyman Mill Company.

The case is remanded to the district court with instructions to amend its judgment against M. H. Wyman and Doran by confining it to them in their capacities as partners in the Wyman Mill Company. In all other respects the judgment is affirmed.